PER CURIAM:
 

 The Kitchens, debtors, appeal from the district court’s decision to vacate the bankruptcy court’s confirmation of the Kitchens’ chapter 13 plan.
 
 In re Kull,
 
 12 B.R. 654 (S.D.Ga.1981). The bankruptcy court found that the Kitchens’ net disposable monthly income for 1979 averaged $1,624.82, $1,800 when federal and state income taxes are included, and that their estimated future monthly income was $1,479. The record suggests that these figures may have been underestimated. The bankruptcy court did find evidence that the debtors’ expenses were overestimated. In their plan, the Kitchens proposed to repay their unsecured creditors to the extent of no more than 10% of their claims, which total $9,215. Upon this element of the plan this court will focus. The plan also listed secured debts totaling $6,128, which, given the debtor’s proposed monthly payments of $275, would be paid in full after two years. In the four or five months following this two-year period, the unsecured creditors would be paid the proposed amount of 10% of their claims.
 

 Appellees, unsecured creditors, objected before the bankruptcy court to the Kitchens’ plan; they asserted that it did not meet the statutory requirement that a plan be proposed in good faith. 11 U.S.C.A. sec. 1325(a)(3) (1979). In answering this objection, the bankruptcy court said little more than that the proposed 10%, to manifest good faith, did not have to be the Kitchens’ “best effort.” The bankruptcy court, apparently reluctant to delve the meaning of “good faith,” seemed to believe that the chief statutory parameter was that of 11 U.S.C.A. sec. 1325(a)(4) (1979), requiring that the property distributed under the plan be of a value not less than the amount which would have been paid under a chapter 7 liquidation. In vacating the bankruptcy court’s order, the district court, which simultaneously ruled in seven other eases, stated a number of factors to be considered by a bankruptcy court in determining whether a plan is proposed in good faith. In affirming the district court’s opinion, we endorse this list of factors, which we will address in greater detail below.
 

 
 *887
 
 Chapter 13, part of the Bankruptcy Reform Act of 1978, differs from the old Chapter XIII by its more liberal treatment of consumer debtors.
 
 [1]
 
 For such debtors, chapter 13 is often a desirable alternative to a chapter 7 liquidation. “Chapter 13 is designed to facilitate adjustments of the debts of individuals with regular income through extension and composition plans funded out of future income, under the protection of the court.” 5
 
 Collier on Bankruptcy
 
 ¶ 1300.02 (15th ed.1982). A chapter 13 plan allows a debtor to preserve his existing assets, while creditors benefit from ratable recovery out of the debtor’s future income, which is unavailable in a chapter 7 liquidation. Following a debtor’s completion of all payments under his chapter 13 plan, he is granted a discharge, which can be more liberal than a chapter 7 discharge. 11 U.S.C.A. sec. 1328 (1979).
 
 [2]
 

 A chapter 13 plan must meet the six criteria of 11 U.S.C.A. sec. 1325(a).
 
 [3]
 
 Our attention focuses on the third of these, 11 U.S.C.A. sec. 1325(a)(3), requiring that the plan be proposed in good faith. In considering the composition of the statute’s good faith requirement, we note the two opposing limiting positions: that which adheres to the “best efforts” or “meaningful or substantial repayment” test, requiring that unsecured creditors be paid, for example, at least 70% of their claims
 
 (see, e.g., In re Heard,
 
 6 B.R. 876 (Bkrtcy.W.D.Ky.1980)); and that which adheres to the “best interests” test, sometimes allowing that unsecured creditors be paid nothing at all (see,
 
 e.g., In re Purdy,
 
 16 B.R. 847 (N.D.Ga.1981)).
 
 See generally,
 
 5
 
 Collier on Bankruptcy,
 
 ¶ 1325.01[2][C] at 1325-8. The “best efforts” test requiring “meaningful or substantial repayment,” although largely arising from some bankruptcy courts' own notions of debtors’ obligations, seems to have a tenuous connection with section 727(a)(9), part of the discharge provisions of chapter 7. 11 U.S.C.A. sec. 727(a)(9) (1979);
 
 see In re Heard,
 
 6 B.R. at 881. Under section
 
 *888
 
 727(a)(9), a discharge for full compliance pursuant to the discharge provision of chapter 13, 11 U.S.C.A. sec. 1328(a), may bar a chapter 7 discharge in a case commenced within six years after the commencement of the case in which the chapter 13 discharge was granted. Such a bar occurs if payments under the chapter 13 plan had totaled less than 70% of the allowed unsecured claims, if the debtor had not proposed the chapter 13 plan in good faith, or if the plan was not the “debtor’s best effort.” 11 U.S.C.A. sec. 727(a)(9). From these chapter 7 provisions regarding bar of a chapter 7 discharge, the court in
 
 In re Heard
 
 extrapolated a “meaningful or substantial repayment” test for the “good faith” requirement of section 1325(a)(3). 6 B.R. at 881. This extrapolation has no basis in the applicable provisions of chapter 13 or their legislative history. The contrasting “best interests” test relies upon the standard present in section 1325(a)(4) requiring that unsecured creditors receive no less under a chapter 13 plan than they would receive under a chapter 7 liquidation. As conceived under the test, employment of this standard is the only assurance of unsecured creditors’ “best [or better] interests.” However, this reasoning, which focuses upon only the simple arithmetic minimum of section 1325(a)(4), neglects the importance of the general “good faith” language of section 1325(a)(3).
 

 Five circuit court opinions, all announced in 1982, while not completely uniform, adopt a middle road between the “best interests” and “best efforts” tests. By this middle road, the facts of each bankruptcy case must be individually examined in light of various criteria to determine whether the chapter 13 plan at issue was proposed in good faith.
 
 In re Estus,
 
 695 F.2d 311 (8th Cir.1982);
 
 Deans v. O’Donnell,
 
 692 F.2d 968 (4th Cir.1982);
 
 Barnes v. Whelan,
 
 689 F.2d 193 (D.C.Cir.1982);
 
 In re Goeb,
 
 675 F.2d 1386 (9th Cir.1982);
 
 In re Rimgale,
 
 669 F.2d 426 (7th Cir.1982).
 

 The courts in all these opinions refuse to adopt a per se rule that a debtor’s failure to make substantial repayment demonstrates lack of good faith:
 

 Congress has nowhere in the statute provided a definition of the term “good faith.” The legislative history is similarly silent on the point.. ..
 

 * * *
 
 *
 
 * *
 

 ... [H]ad Congress intended that such repayment be a condition precedent to confirmation of all Chapter 13 plans it could have explicitly so stated.... Congress did in fact explicitly set a minimum repayment level for unsecured creditors in sec. 1325[ (a)(4) ], but that limit is not one requiring substantial repayment in every plan....
 

 Deans v. O’Donnell,
 
 692 F.2d at 969-71.
 
 See In re Goeb,
 
 675 F.2d at 1388.
 

 In three of these opinions, circuit courts found the general parameters of the meaning of “good faith” in a widely accepted definition of the term as it was employed in chapter 11 of the old Bankruptcy Act:
 

 A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal.
 

 9
 
 Collier on Bankruptcy
 
 ¶ 9.20 at 319 (14th ed. 1978); cited in
 
 In re Estus,
 
 695 F.2d at 316;
 
 Deans v. O’Donnell,
 
 692 F.2d at 972;
 
 In re Rimgale,
 
 669 F.2d at 431.
 

 The courts have elaborated upon this basic inquiry noted by
 
 Collier.
 
 In compiling factors to be considered by bankruptcy courts in their determinations of debtors’ good faith, the Eighth Circuit added to a list already provided by the district court in the present case. The district court had correctly declared that a bankruptcy court must consider but not be limited to the following:
 

 (1) the amount of the debtor’s income from all sources;
 

 (2) the living expenses of the debtor and his dependents;
 

 (3) the amount of attorney’s fees;
 

 (4) the probable or expected duration of the debtor’s Chapter 13 plan;
 

 
 *889
 
 (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
 

 (6) the debtor’s degree of effort;
 

 (7) the debtor’s ability to earn and the likelihood of fluctuation in his earnings;
 

 (8) special circumstances such as inordinate medical expense;
 

 (9) the frequency with which the debt- or has sought relief under the Bankruptcy Reform Act and its predecessors;
 

 (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
 

 (11) the burden which the plan’s administration would place on the trustee.
 

 12 B.R. at 659. The Eighth Circuit court amplified the tenth factor, stating that the bankruptcy court should consider the extent to which claims are modified and the extent of preferential treatment among classes of creditors.
 
 In re Estus,
 
 695 F.2d at 317. All but one of the circuits note that substantiality of the repayment to the unsecured creditors should be one of the factors considered.
 
 [4]
 

 In re Estus,
 
 695 F.2d at 317;
 
 Deans v. O'Donnell,
 
 692 F.2d at 972;
 
 In re Goeb,
 
 675 F.2d at 1390;
 
 In re Rimgale,
 
 669 F.2d at 432.
 

 Like the court in
 
 In re Estus,
 
 we do wish to note that other factors or exceptional circumstances may support a finding of good faith, even though a debtor has proposed no or only nominal repayment to unsecured creditors.
 
 In re Estus,
 
 695 F.2d at 317. Such exceptional circumstances were found in
 
 Matter of Bellgraph,
 
 4 B.R. 421 (Bkrtcy.W.D.N.Y.1980), where the bankruptcy court reasoned as follows:
 

 The case at bar involves “exceptional circumstances” .... It is an exceptional case that requires confirmation because the debtor [a totally disabled 56-year-old mother of seven], to save her home from foreclosure, is proposing to pay off the taxes, pay off her secured creditors or allow them to maintain their security. The secured creditors have consented. No money is being spent to give her this relief. Her plan runs nearly five years. Chapter 7 relief would result in the loss of the home and probably less than full payment to even the secured creditors. No creditors will receive less than they would have in a liquidation. This plan because of the debtor’s limited income is not only her “best effort”, ... but it is a super effort by the debtor to pay her debts and maintain her home.
 

 Matter of Bellgraph, 4
 
 B.R. at 423-24.
 

 The Eighth Circuit court also added to the list consideration of the type of debt to be discharged and whether such debt would be nondischargeable under chapter 7.
 
 In re Estus,
 
 695 F.2d at 317. This point arose in the Eighth Circuit case because the debtors were seeking to discharge student loans, which are not dischargeable under chapter 7, as well as loans from employee credit unions. This is yet another factor to which bankruptcy courts should be alert.
 

 Another factor noted by the Eighth Circuit court is the accuracy of the plan’s statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court.
 
 In re Estus,
 
 695 F.2d at 317. Given the record’s indication of the debtors’ underestimation of income and overestimation of expenses, this factor calls for attention in the present case. The factors we have explicitly mentioned are not intended to comprise an exhaustive list, but they should aid bankruptcy courts as they determine whether debtors have proposed chapter 13 plans in good faith.
 

 The order of the district court is AFFIRMED.
 

 [1]
 

 . The Bankruptcy Reform Act expanded the class of individuals eligible to use the plan. Formerly restricted to wage earner debtors, chapter 13 was made available to any individual with regular income, whether from wages or other sources. 11 U.S.C.A. sec. 109(a) and (e) (1979). The Act eliminated the requirement that a plan be approved by a majority of unsecured creditors. 11 U.S.C. sec. 1052 (repealed); see 11 U.S.C.A. sec. 1324 (1979).
 

 [2]
 

 . The only debts provided for under the chapter 13 plan that are excepted from a full-compliance discharge under section 1328(a) are debts for alimony, maintenance, or support coming within the provisions of 11 U.S.C.A. sec. 523(a)(5) (1979). Other debts that are nondis-chargeable in chapter 7, 11 U.S.C. sec. 523, are dischargeable under section 1328(a). These include educational debts. 11 U.S.C.A. sec. 523(a)(8). However, it should be noted that a discharge in a chapter 13 composition case for full compliance under section 1328(a) may bar a chapter 7 discharge in a case commenced within six years after the commencement of the case in which the chapter 13 discharge was granted. 11 U.S.C.A. sec. 727(a)(9) (1979). Such a bar occurs if payments under the chapter 13 plan totaled less than 70% of the allowed unsecured claims in the chapter 13 case, the plan was not proposed by the debtor in good faith, or was not the “debtor’s best effort.” 11 U.S.C.A. sec. 727(a)(9) (1979).
 

 [3]
 

 .(a) The court shall confirm a plan if—
 

 (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
 

 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 

 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 

 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 

 (5) with respect to each allowed secured claim provided for by the plan—
 

 (A) the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C) the debtor surrenders the property securing such claim to such holder; and
 

 (6) the debtor will be able to make all payments under the plan and to comply with the plan.
 

 11 U.S.C.A. sec. 1325(a) (1979).
 

 [4]
 

 . The District of Columbia Circuit Court, which, of all these circuit courts reporting opinions, employs a test most closely resembling the “best interests” test, does not list factors to be considered in making a good faith determination. Although the court stated that it saw no need to provide a comprehensive definition of good faith, it did note that as to the debtor whose plans were being affirmed, there was no evidence that they “engaged in any specific misconduct, did not intend to carry out the plan, proposed the plan for improper purpose, or did anything else to bring either case within the ambit of bad faith as traditionally interpreted.”
 
 Barnes v. Whelan,
 
 689 F.2d at 200.