### In the Matter of Richard Jay RAMUS, Debtor.

### Bankruptcy No. 81–00999A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 18, 1984.

Paul Bonapfel, Atlanta, Ga., for debtor.

Frank Wilensky, B. Knox Dobbins, Atlanta, Ga., for creditors.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

On October 21, 1983, this court issued an order requesting the parties in interest to assist the court in its determination of whether the debtor's Chapter 13 plan should be confirmed or whether the objections to confirmation should be sustained.

Despite several previous hearings and written briefs, the evidentiary record which the parties had relied upon to support their legal conclusions remained undeveloped. In particular, the debtor and opposing creditors had referred to testimony from the same sources which would have enabled this court to make its Findings of Fact and Conclusions of Law in compliance with Bankruptcy Rule 7052, but those sources were not within the record before this court. Within the 30-day time period provided by the October 21, 1983 order for submission of evidence, the debtor by affidavit, and three unsecured creditors by submission of proofs of claim, responded. Several additional responses by unsecured creditors were received beyond the 30-day deadline.

### FINDINGS OF FACT

1. The Chapter 13 debtor, Richard Ramus ("Ramus") was President and sole shareholder of Trosby, Inc. and Trosby of Georgia, Inc.;

2. On March 2, 1981, Trosby, Inc. and Trosby of Georgia, Inc. (hereinafter "Trosby") filed for Chapter 11 relief under the Bankruptcy Reform Act separately although later the cases were consolidated;

3. Trosby was engaged in the auctioneering trade; Trosby's business was to receive under consignment from owners items to be sold by Trosby at which time Trosby was expected to remit the net proceeds to the consignor;

4. Typically, Trosby and the consignor would execute a contract which would authorize Trosby to sell the consigned items and remit the proceeds minus a 10 percent commission;

5. Trosby listed those who had consigned items for sale and were remitted no proceeds as creditors with unsecured claims;

6. On March 6, 1981, Ramus filed a Title 11 U.S.C. petition for Chapter 13 relief;

7. The Chapter 13 debtor listed as contingent and nonliquidated those claims

which the corporate debtor owed to its consignors;

8. The amount listed by the Chapter 13 debtor as unsecured, contingent and nonliquidated was in excess of $100,000.00;

9. The Creditors' Committee of the Chapter 11 debtor and several other unsecured creditor-consignors objected to confirmation of the Chapter 13 plan as exceeding the jurisdictional limit of 11 U.S.C. § 109(e) and as not meeting the "good faith" standard of 11 U.S.C. § 1325(a)(3);

10. Although Ramus no longer has an ownership interest in Trosby, he has continued on as an employee;

11. The Chapter 13 plan provides for the debtor to make a minimum payment of $200.00 per month, an additional 25% of any gross income over $500.00 per week (not to exceed $400.00 per month), and his tax refund in the amount of $11,894.30 for the tax year 1980.

## DISCUSSION

### BACKGROUND

The Chapter 13 debtor, Ramus, was President and sole shareholder of two corporations which had previously filed for Chapter 11 relief. The relationship between the Chapter 11 and Chapter 13 debtors has accounted in part for the complexity of the determination to confirm or deny confirmation of the Chapter 13 plan.

### Chapter 11 Debtor

The business of Trosby was auctioneering. For this purpose, Trosby, through Ramus, entered into consignment contracts. The typical agreement authorized Trosby to sell the consigned item and required Trosby to remit the proceeds to the consignor minus a 10 percent commission. At the time of bankruptcy, those consignors who had received neither proceeds nor the item they had consigned to Trosby were listed by the corporate debtor as creditors with unsecured claims. A reorganization plan of the corporate debtor was approved by this court on April 6, 1982. Under the confirmed plan, the consignors, as a class of unsecured creditors, were to receive some percentage of the money owed to them.

### Chapter 13 Debtor

When Ramus filed his bankruptcy petition, he included in his schedules the unsecured creditor-consignors of Trosby. According to the Chapter 13 debtor, these claims, listed as contingent and nonliquidated, were included in anticipation of possible lawsuits filed against him personally by the consignors. In response to the notice sent to those scheduled by the Chapter 13 debtor, many of the corporate-debtor consignors did file proofs of claims against the Chapter 13 debtor. The total amount of unsecured claims indicated in the proofs of claims filed exceeded $100,000.00.

Objections to confirmation of the debtor's Chapter 13 plan were filed by the Creditor's Committee of Trosby as well as on behalf of several other consignors. The bases of the objections were essentially two. First, the debtor was ineligible for Chapter 13 relief because he exceeded the jurisdictional limit imposed by 11 U.S.C. § 109(e). The second objection was that the plan did not meet the good faith requirement of § 1325(a)(3).

### SECTION 109(e) OBJECTION

Several hearings were held and written briefs submitted with reference to the applicability of § 109(e). This statutory section of the Code prohibits an individual with noncontingent, liquidated unsecured debt in excess of $100,000.00 from filing a Chapter 13 petition. Arguments were made as to the meaning of "noncontingent" and "liquidated" which are nowhere defined in the present Bankruptcy Code. In the course of these arguments a number of allegations against the Chapter 13 debtor were made: (1) the Chapter 13 debtor had commingled funds held in trust from the sale of consigned items with money required to pay operating expenses of the business; (2) the Chapter 13 debtor, as President and sole shareholder of Trosby, was personally liable to the consignors for the tortious conduct engaged in by Trosby;

and (3) the Chapter 13 debtor admitted to having commingled the funds.

 The importance of the nature of these allegations becomes readily apparent in reviewing bankruptcy case law on the meaning of "noncontingent"[1] in conjunction with Georgia law concerning conversion, Ga.Code Ann. § 26–1808 (Harrison, 1977) [currently OCGA § 16–8–4 (Michie, 1982)] and unfair practices (auctioneer), Ga. Code Ann., § 84–318a(3) [currently OCGA § 43–6–18(3) (Michie, 1982)]. When the debtor's liability is of a tortious nature, courts have been reluctant to find the debt noncontingent where the liability itself has not been fixed prior to the bankruptcy filing.[2] An exception exists where the tort has been admitted by the debtor and the amount is ascertainable. *In re Troyer*, 24 B.R. 727, 730 (Bkrtcy.N.D. Ohio, 1982) (Where the Chapter 13 debtor had admitted to the conversion of at least $265,000.00, the court held that the creditors' claims exceeded the jurisdictional amount under § 109(e) as there was neither contingency nor a nonliquidated amount to the extent of $265,-

---

1. Decisions considering the meaning of "noncontingent" pre-date interpretation of § 109(e) of the Bankruptcy Reform Act. Section 59(b) of the Bankruptcy Act of 1898, its 1952 Amendment which changed the wording "*fixed* as to liability" to "*not contingent* to liability," and the accompanying legislative history have received considerable case law attention: *In re Beechwood*, 36 F.Supp. 140 (D.C.N.J., 1940); *In re Lawton*, 119 F.Supp. 724 (S.D.W.Va., 1954); *In re Walton Plywood*, 227 F.Supp. 319 (W.D. Wash., 1964); *Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376 (CA5, 1971). Among those decisions specifically interpreting § 109(e)'s term "noncontingent" *see In re All Media Properties, Inc.*, 5 B.R. 126 (Bkrtcy.S.D. Tex., 1980); *In re Kelsey*, 6 B.R. 114 (Bkrtcy.S. D.Tex., 1980); *In re Wilson*, 9 B.R. 723 (Bkrtcy. E.D.N.Y., 1981); *In re King*, 9 B.R. 376 (Bkrtcy. D.Or., 1981); *DeKalb Bank v. Flaherty (In re Flaherty)*, 10 B.R. 118 (Bkrtcy.N.D.Ill., 1981); *Sylvester v. Dow Jones & Co., Inc. (In re Sylvester)*, 19 B.R. 671 (Bkrtcy.App., Ninth Circuit, 1982); *In re Longhorn-1979 II Drilling Program*, 32 B.R. 923 (Bkrtcy.W.D.Okl., 1983). *See also Drake & Morris,* "Eligibility For Relief Under Chapter 13" 57 Am.Bankr.L.J. 195 (1983).

2. Generally, tort liability which has not been reduced to judgment prior to the filing of the bankruptcy petition is regarded as contingent. *See In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bkrtcy.S.D.Tex., 1980) ("In the case of a tort claim for negligence, the parties at the time of the alleged negligent act would be presumed to have contemplated that the alleged tortfeasor would be liable only if it were so established by a competent tribunal. Such a tort claim is contingent as to liability until a final judgment is entered fixing the rights of the parties."). *See also Drake & Morris,* "Eligibility For Relief Under Chapter 13," *supra.*

Nor does the recent Oklahoma decision, *In re Longhorn-1979 II Drilling Program, supra,* suggest a different result. The *Longhorn* court held that the debtor's tort "liability does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim . . . . The claim is accrued at the moment the plaintiff could have first maintained an action or stated otherwise, when he would be entitled to institute a judicial proceeding for enforcement of his rights." *Id.* at 927. The distinction is that the *Longhorn* court was interpreting the meaning of "noncontingent" in relationship to commencing an involuntary case pursuant to 11 U.S.C. § 303(b)(1). While much helpful case law interpretation of "noncontingent" has been made under the *commencement of the involuntary case standard,* significantly, it is the *"debt"* that must be noncontingent under § 109(e) rather than merely the *"claim"* as under § 303(b)(1). The definitional section of the Code provides a different meaning for the terms "debt" and "claim": a "debt" is a liability on a claim." § 101(4), (11). The broad definition of a "claim" in the Code provides justification for the *Longhorn* court to find that the debtor's tortious liability predicated upon a "claim" was noncontingent. In the instant circumstances where the tortious liability is predicated upon a "debt" (and, therefore, *liability* must be present), a different conclusion, namely that the debt is contingent, is warranted.

Where liability is of a contractual nature, courts have been much less reluctant to find the liability noncontingent and liquidated even when a judgment fixing the parties' rights prior to the filing of the bankruptcy petition has not occurred. *See In re All Media Properties, Inc., supra.* ("On the other hand, in the ordinary debt arising from, for example, a sale of merchandise, the parties to the transaction would not at that time view the obligation as contingent . . . . A legal obligation arose at the time of the sale, although the obligation can possibly be avoided. Such a claim is disputed, but it is not continged.")

*But cf. In re King, supra.* This court rejects the *King* court's notion that because the debtor "disputes" the liability a finding of contingency is required. *Accord, Sylvester* at 673–74, *supra.*

000.00); *In re Furey,* 31 B.R. 495 (Bkrtcy.E.D.Pa., 1983) (Where the Chapter 13 debtor admitted misappropriating and converting checks from his employer in excess of $228,000.00, the court held that amount would be included in the calculation under § 109(e) as there was neither contingency nor a non-liquidated amount to the extent of $228,000.00). In the instant circumstances, allegations against the debtor were of a tortious nature. Included, however, was an allegation that the debtor had admitted commingling funds. The commingling of funds combined with the contractual agreement between the consignors and Trosby may have enabled the consignors to establish a noncontingent, liquidated unsecured debt which would have required dismissal of the debtor's Chapter 13 case on the grounds that it exceeded the jurisdictional limit imposed by § 109(e). Because those objecting to confirmation, however, submitted no evidence in support of their allegations, this court finds that the jurisdictional amount for noncontingent, liquidated unsecured debt pursuant to § 109(e) is not exceeded and does not prevent the debtor from filing a Chapter 13 petition.

## SECTION 1325(a)(3) "GOOD FAITH" OBJECTION

■ The "good faith" objections interposed by those contending that the Chapter 13 plan should be denied confirmation were (1) that the plan was not in the "best interests" of all creditors, (2) that it would pay less than 2 percent to unsecured creditors, and (3) that the debtor would receive a discharge of a liability which would be nondischargeable under a Chapter 7. Since these objections were initially interposed, the Eleventh Circuit has set forth non-exhaustive but specific guidelines which a Bankruptcy Court is to consider in confirming a Chapter 13 plan. *Kitchens v. Georgia Railroad Bank and Trust Company (In re Kitchens),* 702 F.2d 885 (CA11, 1983); *King v. Flournoy (In re King),* 705 F.2d 437 (CA11, 1983) (reaffirming the *Kitchens* decision). These guidelines essentially remove consideration of the first two objections, as those objections are focused. The third

challenge, that Ramus would receive a discharge for liability which would be nondischargeable under a Chapter 7, is mentioned in the *Kitchens* decision as a factor considered by the Eighth Circuit. *Kitchens* at 889, citing to *In re Estus,* 695 F.2d 311, 317 (CA8, 1982). Again, as those objecting to confirmation submitted no evidence to support their allegations, the court does not reach the merits of the objection.

■ Additionally, in reviewing the *Kitchens* criteria for evaluating the debtor's "good faith" in proposing the Chapter 13 plan, this court does not find its absence. No evidence has been introduced that would trigger a red flag in answer to the factors posed by the Eleventh Circuit: the debtor has proposed that his plan be funded from income he receives from his work at Trosby's along with a substantial tax refund; the plan calls for a minimum amount to be paid monthly by the debtor with a larger amount to be paid monthly if the debtor's earnings are higher; there appear to be no extraordinary medical expenses, living expenses or attorney's fees; on the basis of the evidence submitted, there is no reason to suspect the debtor's degree of effort, his motivation and sincerity, the circumstances under which his debts were contracted, or the accuracy of the plan's statements; this debtor has not previously sought relief under the Bankruptcy Reform Act nor does the plan place an undue burden on the trustee's administration.

## CONFIRMATION OF THE CHAPTER 13 PLAN

Section 1325(a) sets forth the Code's criteria for determining whether a Chapter 13 plan shall be confirmed. The legislators left the court with no discretion if the plan meets the criteria: such a plan which meets the standards of the six subparagraphs of § 1325(a) *"shall"* be confirmed by the court. In the instant circumstances, this court finds that the debtor's plan meets the required criteria and, therefore, this court must confirm the Chapter 13 plan.

For the reasons set forth above, this court confirms the debtor's Chapter 13 plan.