In re John David ROSE, Jr., Debtor.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff,**

v.

**John David ROSE, Jr., Defendant.**

Bankruptcy No. 81-03402A.
Adv. No. 81-2092A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 14, 1984.

---

Malcolm P. Smith, Montet & Smith, P.C., Atlanta, Ga., for plaintiff.

Michael S. Haber, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

On October 30, 1981, the Hartford Accident and Indemnity Company ("Hartford") commenced the above-referenced adversary proceeding to determine the dischargeability of a debt. Hartford prays that its claim in the amount of $45,000.00 in this bankruptcy case will be determined to be nondischargeable. Hartford's claim is based on a civil judgment against the debtor, John David Rose, Jr. ("Rose") for fraud and conversion. Rose responded to the complaint by filing a motion to dismiss and an accompanying brief on November 18, 1981. A hearing for Hartford to show cause why the complaint should not be dismissed was held on December 9, 1981. Following the hearing, the Court took this matter under advisement. Rose was instructed to file a brief by January 1, 1982, and Hartford was given ten days thereafter to respond. Counsel for Rose submitted a request for additional time in which to file briefs so as to narrow the substantive issues before the Court. On November 9, 1983, the parties filed a stipulation of facts, and the case is now ripe for disposition.

## FINDINGS OF FACT

1. From 1971 until July 11, 1975, Rose was employed as General Manager and later as President and General Manager of the Hospital Data Center of South Carolina, Inc. ("Hospital Data") in Columbia, South Carolina.

2. Hospital Data is a nonprofit corporation organized to provide computer services to a number of hospital facilities.

3. Rose and Lawrence W. Appleton ("Appleton"), Vice President and Assistant Manager of Hospital Data, allegedly set up

a shell corporation to which they intentionally misappropriated certain business forms, print-out paper, computer time and employee services which rightfully belonged to Hospital Data, their employer. A total of $68,724.23 was collected by the entity created by Rose and Appleton to receive payments on their behalf for services which were, in fact, performed with the resources of Hospital Data.

4. During the time in question, Hospital Data was insured under a blanket bond by Hartford. After allegedly paying a substantial portion of the amount claimed in Hospital Data's proof of loss, Hartford exercised its right of subrogation and commenced a civil action against Rose and Appleton in the United States District Court for the District of South Carolina, Columbia Division.

5. An order for judgment by default was entered in the civil action which, by consent of the parties, provides that:

Plaintiff [Hartford] have judgment against the defendant John D. Rose, Jr. for the sum of Forty-Five Thousand ($45,000.00) Dollars, which judgment shall be satisfied by the plaintiff upon the voluntary payment by the defendant John D. Rose, Jr. of the sum of Twenty-Five Thousand ($25,000.00) Dollars, together with interest at the legal rate from the date of this judgment.

7. Rose's alleged misconduct also gave rise to a criminal action. On May 13, 1976 in the General Sessions Court of the State of South Carolina, County of Lexington, Rose pleaded *nolo contendere* to conspiracy to commit larceny and was ordered by the Court to pay the sum of $9,500.00, of which $7,300.00 was restitution and $2,200.00 represented a fine to the County.

8. Rose complied with all the terms of the Order of the Court of General Sessions in the criminal action. Rose paid all fines and made restitution in strict compliance with the order such that all pecuniary requirements thereunder were completed by February, 1978.

9. Rose filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 17, 1981.

10. Hartford filed a proof of claim in the bankruptcy proceeding for the principal amount of $45,000.00 with accrued interest, as of September 22, 1981, totaling $11,287.50.

11. Rose's Chapter 13 plan proposes to pay 1% of $25,000.00 in satisfaction of Hartford's claim. The plan provides further that all undisputed, noncontingent, liquidated unsecured claims; and disputed, contingent and unliquidated unsecured claims as allowed by the Court shall be paid 5% of their respective amounts.

12. The debtor's Chapter 13 plan was confirmed by Order of the Court entered on November 4, 1981.

13. Hartford brings the instant action to deny Rose's discharge as to the indebtedness owed it predicated upon §§ 17a(2) and (4) of the Bankruptcy Act as alleged in Hartford's complaint.

## CONCLUSIONS OF LAW

The applicable standard for a motion to dismiss for failure to state a claim upon which relief can be granted was laid down by the Supreme Court in the case of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

For the purpose of ruling on the instant motion, the Court accepts the truthfulness of the averments in the complaint. See *Ward v. Hudnell*, 366 F.2d 247 (5th Cir. 1966). The issues before the Court are: (1) Can Hartford raise the allegation of fraud to bar the discharge of Rose's debt in a Chapter 13 proceeding; and (2) Can Hartford, in the alternative, demand "substantial and meaningful payments" so as to prevent Rose from discharging his indebtedness to Hartford following a 1% payout

on $25,000.00? The Court addresses the issues in seriatim.

It is undisputed that a Chapter 13 discharge under § 1328(a) is broader than a discharge in Chapter 7. *In re Powell,* 8 CBC 2d 506, 29 B.R. 346 (Bkrtcy.D.Colo. 1983); *In the Matter of Scher,* 4 CBC 2d 784, 12 B.R. 258 (Bkrtcy.S.D.N.Y.1981); *In re Graff,* 3 CBC 2d 421, 7 B.R. 426 (Bkrtcy.D.Kan.1980); *In re Lewis,* 2 CBC 2d 1138, 5 B.R. 575 (Bkrtcy.N.D.Ga.1980); *In re Keckler,* 1 CBC 2d 574, 3 B.R. 155 (Bkrtcy.N.D. Ohio 1980); *In re Burrell,* 1 CBC 2d 474, 2 B.R. 650 (Bkrtcy.N.D.Cal.1990). Included in this broader Chapter 13 discharge are debts tainted by fraud. *Memphis Bank & Trust Company v. Whitman,* 7 CBC 2d 727, 692 F.2d 427 (6th Cir.1982); *In the Matter of Esser,* 7 CBC 2d 149, 22 B.R. 814 (Bkrtcy.E.D.Mich.1982); *In re Burrell, supra.* The only statutory exceptions to discharge enumerated in § 1328(a) are: (1) long-term debts provided for under § 1322(b)(5); and (2) debts in the nature of alimony, maintenance or support as specified in § 523(a)(5).

This Court has carved an exception to the Chapter 13 discharge which is not found in the Bankruptcy Code itself, *Newton v. Fred Haley Poultry Farms (In re Newton),* 15 B.R. 708 (Bkrtcy.N.D.Ga.1981), affirmed, Civil Action No. 81–2170A (N.D.Ga., May 24, 1982), wherein this Court states that:

> An order for restitution is part of a criminal action against the debtor. In the instant case, and pursuant to Georgia law, restitution is part of the sentence imposed on the debtor for his violation of the criminal law. Accordingly, the order of restitution would not be stayed by the filing of a petition in bankruptcy ... Thus, as a practical matter, the debt in the instant case is nondischargeable.

Affirming the Bankruptcy Court, the District Court states that:

> Restitution required as a condition of probation under Georgia law is not primarily a debt, however, but is a form of punishment that is also a duty owed to the citizens of Georgia.

However, *Newton* is of no help to Hartford in the case *sub judice.* In order to find that restitution is not dischargeable, the District Court in *Newton* first reasons that restitution is not a "debt" within the ambit of Bankruptcy Code § 1328(a). The analysis is as follows:

> 11 U.S.C. § 101(11) defines "debt" to mean "liability on a claim." 11 U.S.C. § 101(4) defines "claim" as a "right to payment" or a "right to an equitable remedy for breach of a performance, if such breach gives rise to a right to payment." A "creditor" is defined as an entity with a "claim" against the debtor. Thus, under the Bankruptcy Code's statutory scheme, if an entity has a "right to payment" from the debtor, the debtor and the entity have a debtor-creditor relationship, and the obligation running from the debt to the entity is a debt which is dischargeable under the terms of 11 U.S.C. § 1328(a), with the two [statutory] exceptions previously mentioned.

Whereas criminal restitution required as a condition of probation does not give rise to a debtor-creditor relationship, *Newton, supra,* such a debtor-creditor relationship clearly exists between Rose and Hartford in the instant case. Hartford holds a right of payment against the debtor by way of its default judgment in the District Court of South Carolina. In accordance with the above-quoted language from the District Court in *Newton,* Hartford's debt is dischargeable unless it falls within one of the two statutory exceptions to § 1328(a), which it plainly does not. Finding that the debt is dischargeable, the Court must address the sufficiency of Rose's proposed 1% payment plan.

Hartford cites the case of *In re Osborne,* 3 CBC 2d 586, 8 B.R. 200 (Bkrtcy.N.D.Ill. 1981), for the proposition that a Chapter 13 debtor must make "substantial and meaningful payments" to comply with the good faith requirement of § 1325(a)(3) of the Bankruptcy Code. Although this case is not in the proper posture for the Court to reconsider its Order confirming the Chapter 13 plan, the Court will, nonetheless, dispose of Hartford's argument that Rose's efforts are insufficient under his Chapter 13 plan.

*Osborne* is but one of many cases taking the position that § 1325(a)(3) sets forth a quantitative requirement with respect to payments under the Chapter 13 plan. See, e.g., *In re Heard,* 6 B.R. 876 (Bkrtcy.W.D. Ky.1980). The "meaningful or substantial repayment" test, also known as the "best efforts" test, derives from § 727(a)(9), part of the discharge provisions of Chapter 7. Under § 727(a)(9), a Chapter 13 discharge bars a subsequent Chapter 7 discharge within six years after the commencement of the case in which the Chapter 13 discharge was granted if: (1) payments under the Chapter 13 plan totals less than 70% of the allowed unsecured claims; (2) the debtor did not propose the Chapter 13 plan in good faith; or (3) the Chapter 13 plan was not the "debtor's best effort".

Contrary to *Osborne* and *Heard,* a line of cases developed which applies a "best interests" test in which the courts have permitted Chapter 13 debtors to make zero payments on unsecured debts. See, e.g., *In re Purdy,* 16 B.R. 847 (D.C.N.D.Ga.1981). The "best interests" test is founded upon § 1325(a)(4), which requires that unsecured creditors receive no less under a Chapter 13 plan than they would receive under a Chapter 7 liquidation.

The Circuit Courts of Appeals took a close look at these competing tests in five significant opinions handed down in 1982. *In re Estus,* 695 F.2d 311 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982); *Barnes v. Whelan,* 689 F.2d 193 (D.C. Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982). These cases all adopt a middle ground on the issue of confirmation of Chapter 13 plans. The Eleventh Circuit Court of Appeals in *In re Kitchens,* 702 F.2d 885 (11th Cir.1983), discusses these cases and enumerates a non-exclusive list of factors which the Bankruptcy Court must consider in the context of confirmation of Chapter 13 plans.

■ Under the authority of *Kitchens,* this Court is directed to consider the circumstances under which Rose contracted his debts in deciding whether to confirm his plan. See *In re Kitchens,* 702 F.2d at 889. The weight of appellate authority suggests that the Bankruptcy Court should also consider the substantiality of the repayment to the unsecured creditors. *Id.* Hence, despite the broader discharge under Chapter 13, the Court has authority under *Kitchens* to deal with a debtor who has perpetrated a fraud on his creditors and who would possibly be unjustly enriched by receiving a Chapter 13 discharge. However, this authority only comes into consideration on the issue of confirmation. Having failed to dissuade this Court from confirming Rose's Chapter 13 plan, the Court is without authority to hold the debt nondischargeable by reason of fraud, and Hartford may not relitigate the substantiality of the plan through the instant adversary action.

Because Hartford cannot prevail on its complaint, Rose's motion to dismiss under Federal Rule of Civil Procedure 12(b), applicable to this proceeding by Bankruptcy Rule 7012, it is hereby GRANTED.

IT IS SO ORDERED.