**In re Warren TORVIK, Debtor.**

**No. 02–17123–9P3.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

March 4, 2003.

Richard J. Hollander, Naples, FL, for debtor.

Terry E. Smith, Bradenton, FL, trustee.

Louis X. Amato, Naples, FL, for Movant Inland Finance Company.

## ORDER ON MOTION TO DISMISS CHAPTER 13 CASE

### (Doc. No. 10A)

ALEXANDER L. PASKAY, Chief Judge.

This is a challenge by Inland Finance Company (Inland) on the right of Warren Torvik (Debtor) to obtain relief for the second time under Chapter 13 of the Bankruptcy Code. It is the contention of Inland that the second Petition (Stip.Ex. 8), filed by the Debtor on September 3, 2002, was filed in bad faith and, therefore, it should be dismissed pursuant to Section 1307(c) of the Code for "cause." On November 15, 2002, Inland filed "Creditor Inland Finance Company's Motion to Dismiss Chapter 13 for Bad Faith Filing or Alternatively to Convert the Case to Chapter 7 Due to Debtor's Fraudulent Conduct," which is the present matter before this Court.

The facts relevant to the Motion to Dismiss are basically without dispute and can be summarized as follows. Prior to February 4, 2002, the Debtor was operating a business under the trade name of Sir Vend A Lot. During the operation of the business, the Debtor financed the purchase of several vending machines through Inland. As part of this transaction, the Debtor executed on November 2, 1998, a Security Agreement–Installment Contract (Stip.Ex. 1), in which he pledged, as collateral "can drink mid-size ocean glass front and glass-front/19 select with validator." On January 4, 1999, Inland perfected its security interest by filing a UCC–1 with the Secretary of State for the State of Florida (UCC–1). (Ex. 2). The financing statement described the collateral as "1 Serial # 1061745 GF 19/19 II RF Machine and 4 Serial # 1062366 1062365 1062364 1062363 CD 8 Mid Size Machines." *See* Sec. 5 of the UCC–1.

On May 3, 1999, the Debtor executed a second Security Agreement–Installment Contract and pledged as collateral a Tabletop Snack 9 select and a can drink mid size ocean front. (Stip.Ex. 3). On June 2, 1999, Inland filed a UCC–1 Financing Statement with the Secretary of State for the State of Florida (Second UCC–1), perfecting its lien in the collateral described. (Stip.Ex. 4).

On February 4, 2002, the Debtor filed his first Voluntary Petition for Relief under Chapter 13. (Stip.Ex. 5). His Petition, which was accompanied by the documents required by F.R.B.P. 1007, included, of course, a Statement of Financial Affairs. In answering Question No. 1, which required the Debtor to disclose his income during the preceding two years of the filing of the Petition, he stated that his wages for the tax year 2002 was $1,800; for the tax year 2001 was $29,547; and for the tax year 2000 was $20,901. However, for the year 2001, in his tax return filed with the Internal Revenue Service (IRS), the Debtor indicated his income for the year 2001 was $19,372.17. (Movant's Ex. 9).

In the first Chapter 13 case, on July 5, 2002, Inland filed a Motion to Dismiss the

Chapter 13 case based on bad faith, and shortly thereafter the Debtor, on July 29, 2002, filed his own voluntary motion to dismiss the Chapter 13 case. On August 2, 2002, this Court entered an order and granted the Debtor's motion to dismiss the Chapter 13 case. (Stip.Ex. 7).

Prior to the entry of the Order, the Debtor paid to his counsel of record, the law firm of Miller & Hollander, the sum of $1,500 for legal service to be rendered for the Debtor for filing a second Chapter 13 case, in the event the first Chapter 13 case was dismissed. It is evident that it was contemplated that a second filing would be done shortly thereafter. Before the motion to dismiss was granted, the Debtor received the money he had originally paid to the Chapter 13 Trustee, and then used the same to pay his attorneys of record for the contemplated second filing.

It is without dispute that the Debtor did, within the relevant time, sell approximately 14 vending machines, which were the collateral of Inland and for which he received approximately $4,500. (Movant's Ex. 10). It is without dispute that Inland did not consent to the sale and was not advised of the sale and the information surfaced only when, at the meeting of creditors, the Debtor for the first time disclosed this particular transfer. It is also without dispute that in answering Question No. 10 on the Statement of Financial Affairs, which requires the Debtor to disclose any transfer of property other than in the ordinary course of business, the Debtor answered the question "none." (Stip.Ex. 5). After the conclusion of the meeting of creditors on June 17, 2002, the Debtor filed "Debtor's Amendment to Statement of Financial Affairs," whereby he amended his previous answer to Question 10, and stated that approximately between July and October 2001, he sold 15

vending machines and received $4,500 from the sale.

With the Debtor's second Chapter 13 case, the Debtor filed the required documents with his Voluntary Petition. (Stip.Ex. 8). Again, he included the Statement of Financial Affairs, in which he stated his income for the year 2001 to be $29,547 and for the year 2000 to be $20,901. In answering Question No. 2, which requires a disclosure of income other than from employment or operation of business, the answer was "none," ostensibly because this time the sale of the vending machines and the receipt of the funds from the sale occurred outside the relevant period. The income stated in answering Question 1, is again inconsistent with the amount stated by the Debtor's tax return (Movant's Ex. 9), which indicated a gross income for the year 2001, in the amount of $19,372.17.

In response to a question in his deposition, the Debtor admitted that he had no records whatsoever relevant to the operation of his business; that he never kept any records; and had no records whatsoever as to the disposition of the monies he received from the sale of the vending machines. (Movant's Ex. 10).

These are basically the facts relevant as established at the final evidentiary hearing based on which it is the contention of Inland that this record leaves no doubt that not only the first but especially the second Chapter 13 case was filed in bad faith, thus it should be dismissed for "cause" pursuant to Section 1307(c) of the Code. Moreover, Inland contends that the Debtor's conduct prior to filing the first case coupled with the Debtor's lack of honesty and forthrightness in connection with the execution of the Statement of Financial Affairs, was the motivating factor in escaping the consequences of his conduct by filing the second Chapter 13

case, which was an improper manipulation of the system. Thus, the filing was for an improper purpose.

In this connection, counsel for Inland points out that when he filed his first motion to dismiss in the first bankruptcy case, there was more than ample evidence to warrant the granting of Inland's motion to dismiss which, in turn, certainly would have prohibited the Debtor to re-file the second case for at least 180 days. However, the Debtor was permitted to file the second case because this Court granted the Debtor's voluntary motion to dismiss. Be that as it may, counsel for Inland contends that this record reveals a pattern of persuasive dishonesty and is conduct which has provided ample basis to bar the Debtor's discharge in a Chapter 7 case for the transfer of the vending machines, the intent to defraud or delay creditors, for failure to keep adequate books and records while in business, and for failure to satisfactory explain loss of assets. According to Inland, the totality of this picture represents ample cause for dismissal of this Chapter 13 case.

In support of the proposition urged by counsel for Inland, counsel cites several cases, among others the case of *In re Green*, 141 B.R. 440 (Bankr.M.D.Fla.1992); *In re Buchanan*, 225 B.R. 672 (Bankr. Minn.1998); and *In re Wilcox*, 251 B.R. 59 (Bankr.E.D.Ark.2000). In *Green* and *Buchanan*, both courts held that omissions from Schedules warranted dismissal of a case for cause. In *Wilcox*, the court listed factors to consider in dismissing a case for cause.

In response, counsel for the Debtor contends that this record is devoid of any evidence that this Debtor intended to deceive or defraud this Court. That it was perfectly proper to file a second Chapter 13 in order to gain the benefit of the liberal discharge provisions of Chapter 13, which is certainly permissible and none of the omissions were really material in the context of a Chapter 13. He cites the case of *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983) for this proposition.

This record leaves no doubt that the Debtor filed the first Chapter 13 case for the sole purpose of avoiding the inevitable consequences of his pre-filing behavior. While the desire to take advantage of the liberal discharge provision of Section 1328 of the Code would not necessarily warrant a finding of bad faith, what followed revealed a glaring paradigm of total lack of candor, lack of honesty and forthrightness required from all who seek the benefits of the remedies accorded to those who seek relief in the bankruptcy court. The fact that that the Debtor sought voluntarily a dismissal of the first Chapter 13 case is of no significance, especially since he was already called on the carpet to face a Motion to Dismiss filed by Inland. It is notable that even before the order granting his Motion to Dismiss was entered, he already paid his attorney for filing the second Chapter 13, the sum of $1,500, used from the funds he recovered from the Chapter 13 Trustee for monies he had paid during the pendency of the first Chapter 13 case. Thus, it is crystal clear that he already made the decision to re-file even before the first was actually dismissed.

Concerning the totality of the undisputed facts of this case, this Court is satisfied that the Debtor systematically manipulated the system and this Chapter 13 case was filed in bad faith. Therefore, pursuant to Section 1307(c) of the Code, it is appropriate to dismiss the same for "cause" with prejudice with the proviso that the Debtor shall not be permitted to re-file within 180 days of the entry of this Order.

Accordingly it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Dismiss be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DE-CREED that this case shall be dismissed with prejudice with the proviso that the Debtor shall not be permitted to re-file within 180 days of the entry of this Order.