**In re Carol D. ROBERTS, Debtor.**

**No. 05–11325 JDW.**

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

March 17, 2006.

Cawthon H. Custer, Albany, GA, for Debtor.

T. Lee Bishop, Jr., Albany, NY, for Bank.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Bank of Dawson's objection to confirmation of Debtor's Chapter 13 plan. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor Carol Roberts filed a Chapter 13 petition and plan on June 24, 2005. The plan indicated that Debtor owed Bank of Dawson (the "Bank") $49,136 for three accounts. Debtor proposed to pay $17,575, the value of a 2004 Jeep Cherokee used as collateral, at a rate of $388 per month with 9 percent interest for a term of 56 months. Debtor also proposed to surrender additional collateral, a 2002 Jeep Cherokee. The plan provided no dividend to unsecured creditors.

The Bank filed an objection to confirmation of the plan. At the confirmation hearing held on February 22, 2006, the Bank objected on several grounds that the plan was not filed in good faith, citing numerous irregularities and inaccurate representations in Debtor's schedules, and that the plan was not feasible. Based on evidence presented at that hearing, the Court finds the following facts with respect to problems identified by the Bank:

**Mother's residence**. Sometime prior to filing for bankruptcy, Debtor's mother transferred real property valued at approximately $40,000 to Debtor and Debt-

or's husband. The mother made the transfer to enable Debtor and her husband to obtain a loan for the mother's benefit. The loan proceeds were used to make improvements to the property. The mother could not borrow the money because she was not credit-worthy. However, the mother made all the payments on the loan. The current balance of the loan is approximately $30,000.

When Debtor filed this bankruptcy case, she failed to list her one-half interest in the mother's residence. Because the house has approximately $10,000 in equity, Debtor's interest could be valued at $5,000. The identity of the mortgage holder was listed in the schedule of unsecured debts with a debt of $1 and a description of "surrender." Debtor's attorney stated in his place that the $1 amount of the debt was listed because he did not know the amount of the debt and that the description of "surrender" was his best effort at trying to describe the status of the property. However, later in the hearing, Debtor's attorney admitted that Debtor had supplied the information about the house to him and that the disclosure had been partly made in the initial schedules. Confusion over the way to treat the listing of the property in this bankruptcy led the lawyer, through inadvertence, to fail to list the property as owned by Debtor in the schedule of real property.

Debtor gave a slightly different explanation for the omission. She testified that she never thought she had any actual ownership interest in the property and had done nothing to justify entitlement to any of the equity. In addition, the identity of the subdivision contained a name different from the street address of the house. Debtor testified that she did not recognize the name of the subdivision and was, therefore, unable to identify the property in questioning at the § 341(a) meeting by the Bank's counsel. However, in a prior Chapter 7 case filed in 2000, Debtor did list the property and reaffirmed the debt. Debtor explained that the property was reaffirmed after the Chapter 7 case to permit her mother to continue to pay the debt. After being confronted with the ownership of the property at the Section 341(a) meeting, Debtor amended her schedules to include it.

The Court finds that Debtor's explanation of the failure to identify this property as only moderately credible. It is impossible to know how familiar the name of the subdivision may be as a point of reference for identity to this property. Sometimes subdivision names are prominent in the identity and sometimes they are not. It is impossible to know based on the evidence presented at the hearing whether this ambiguity was a legitimate encumbrance to Debtor's recollection.

It also is notable that Debtor failed to list her previous residence of some 12 years at this property. Debtor's lawyer stated that Debtor actually told him about the prior residence but through inadvertence it was omitted from her bankruptcy petition.

**1.5 acres.** Also at issue is a tract of real property, 1.5 acres of undeveloped land. There is some dispute about whether the Bank has a security interest in the land. Debtor owned the property at some point in the past and gave the Bank a mortgage on it while she owned it; that mortgage was paid in full. The Bank made subsequent advances to Debtor; the parties dispute whether the later advances were secured by the 1.5 acres.

Documents supplied by the Bank at the hearing show that Debtor had given the land as collateral on two separate occasions; on neither occasion did she own the property. In a promissory note and security agreement dated July 29, 2004, Debtor

borrowed $22,106.05, and gave the Bank a security interest in the 1.5 acres and in two vehicles. In a promissory note and security agreement dated January 5, 2005, Debtor borrowed $2,585 and gave the Bank a security interest in the 1.5 acres.

Debtor testified that the documents did not contain a reference to the 1.5 acres at the time she signed them. She further testified that after receiving copies of the notes, she called the Bank twice to complain about the inclusion of the 1.5 acres as collateral and explained that she did not own the property. She testified that the two calls were made after she signed the first note but were not the subject of any discussion following the execution of the second note.

Debtor's testimony as to the fact that the notes did not contain the reference to the 1.5 acres was credible, but the testimony of the Bank's officer to the effect that the Bank does not have any blank note and mortgage documents was more credible. On balance, the Court finds Debtor's testimony to be erroneous but not intentionally misleading. Her testimony can be interpreted to mean that she did not understand that the Bank was making a claim of collateral interest in the property, but the Court finds that the documents did contain the reference to the 1.5 acres as collateral at the time Debtor signed them.

With respect to Debtor's ownership of the 1.5 acres, she transferred the property to her mother before signing either of the notes at issue. Debtor credibly explained that she effected the conveyance to protect the property from claims by her husband during a time of martial strife. The 1.5 acres does not have a permanent structure established on it. At one time, Debtor and her husband lived on the 1.5 acres in a mobile home owned by Debtor's nephew. At this time, however, it appears the property is vacant and undeveloped.

It is worth noting that in taking the 1.5 acres as security, the Bank never conducted any title examination to determine that Debtor was the actual owner of the property. At a minimum, the Court finds the claim of security interest was not considered by the Bank to be essential security. Furthermore, considering the Bank officer's testimony that he had a long relationship with Debtor, it is as likely that he relied on this relationship in believing Debtor's representation as it is likely that he picked up the real estate property from previous bank records and asserted a claim to the real estate in the documentation without any actual discussion with Debtor. While the Bank officer was credible, his recollection of the facts was sketchy and based more on standard practice than on specific recollection of transactions and conversations with Debtor.

**Debt to mother.** In addition to the mother's involvement with Debtor's real property, the Bank complained that Debtor did not list indebtedness to her mother in the amount of $3,000 or repayment of that indebtedness in the amount of $600. However, the debt was never reduced to writing. Debtor admitted that the mother did loan her $3,000 and that she felt a moral obligation to pay the debt but explained that she omitted the debt from her schedules because she would not have to pay it if she was unable to do so.

A payment of $600 to the mother, admitted by Debtor, was not repayment of the debt but was instead intended as assistance to her mother and repayment of other short term loans from her mother. While the Court finds there is some sense of indebtedness between Debtor and her mother, it is not one that could be the subject of any legal action and arguably could be, although it should not have been, disregarded by Debtor in preparing a list of creditors.

**Purchase of home.** Shortly before filing this case, Debtor and her husband purchased a new home with payments of about $1,100 per month. The new home is titled in the husband, whose income substantially exceeds Debtor's. The purchase was financed by a gift of $5,000 from Debtor's sister, which was not listed in Debtor's schedules. Debtor testified that the gift was from her sister to her husband to help in the purchase of the house.

**Amendments to schedules.** At the time of trial, Debtor's schedules had been amended to correct all of the irregularities complained of by the objecting creditor. It appears these amendments were made promptly upon being confronted with the irregularities by the creditor. This prompt amendment militates to some degree the inaccuracies in the schedules.

**Payment arrearage.** Debtor fell behind in the payments initially, in this case. However, at the time of hearing, payments were up to date.

### Conclusions of Law

For the Court to confirm a Chapter 13 plan, it must have been "proposed in good faith," and the debtor must "be able to make all payments under the plan and to comply with the plan[.]" 11 U.S.C. § 1325(a)(3), (6). These are known, re-

spectively, as the good-faith and feasibility requirements.

### Feasibility

■ The Bank's objection to confirmation based feasibility can be easily decided. Although Debtor fell behind with payments early in the case, she is now current. No evidence demonstrates that Debtor will be unable to make payments or comply with the plan. Consequently, the Bank's challenge to feasibility is without merit.

### Good Faith

■ "Good faith" is one of those nebulous terms that Congress has left undefined. Consequently, courts have been obliged to craft a test to determine whether or not good faith exists. The Eleventh Circuit Court of Appeals set forth such a test when considering whether a Chapter 13 plan had been proposed in good faith as required by § 1325(a)(3). *Kitchens v. Georgia R.R. Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983). In that case, the court adopted a totality of the circumstances test and articulated a nonexclusive list of factors [1] for courts to consider. *Id.* at 888–89. The factors are merely a guide, and " '[b]roadly speaking,

---

1. The factors are as follows:

(1) the amount of the debtor's income from all sources;
(2) the living expenses of the debtor and his dependents;
(3) the amount of attorney's fees;
(4) the probable or expected duration of the debtor's Chapter 13 plan;
(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
(6) the debtor's degree of effort;
(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;
(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
(11) the burden which the plan's administration would place on the trustee;
(12) the substantiality of the repayment to unsecured creditors;
(13) whether the debt would be nondischargeable under Chapter 7; and
(14) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court. 702 F.2d at 888–89.

the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal.'" *Id.* at 888, (quoting 9 Collier on Bankruptcy ¶ 9.20 (14th ed.1978)). The analysis has also been applied in determining whether the case itself has been filed in good faith. *NeSmith v. James (In re James)*, No. 98–20139, 1998 WL 34064494, at *3 (Bankr.S.D.Ga. July 30, 1998).

■ In this case, the Bank has raised a number of inaccuracies in Debtor's schedules. Any one of them alone likely would not be sufficient to suggest a lack of good faith. However, the Court must consider whether, when considered in their entirety, they indicate a lack of good faith.

**Mother's residence.** Creditor had multiple objections with respect to the mother's residence that can be consolidated into two categories. First, Debtor failed to list her interest in the property. Second she failed to list the property as her prior residence for 12 years. The Bank contends that Debtor omitted these facts for the purpose of concealing her ownership in her mother's home. The facts are troublesome because Debtor did list her interest in the property in a prior bankruptcy case. Nevertheless, it is possible Debtor misunderstood the legal implications of the transactions, especially since they were done primarily for the benefit of the mother, and the mother made all debt payments owing on the residence.

Furthermore, it is true that Debtor told her attorney about the prior residence but through inadvertence the attorney omitted it from her bankruptcy schedules. However, Debtor read and signed the petition after it was prepared without the necessary address. It raises the difficult question of whether a case is filed in good faith when an omission occurred due to the lawyer's inadvertence but was not remedied by the debtor's review of the schedules before signing. Although the Court is not inclined to dismiss this case on the strength of this element, it is cumulative in the collection of discrepancies in this case.

**1.5 acres.** Debtor listed a loan from the Bank for $2,585 as an unsecured claim. However, the Bank presented a promissory note and security agreement signed by Debtor demonstrating that the loan was secured by certain 1.5 acres of real property. In addition, a second loan from the Bank was listed as secured by a single vehicle. Again, the Bank presented a promissory note and security agreement signed by Debtor indicating that it was secured by two vehicles and the 1.5 acres. Debtor did not own the 1.5 acres at the time she signed either note, and she testified that the reference to the 1.5 acres was added to the note after she signed it.

The Court is persuaded that the two notes did list the 1.5 acres as security at the time Debtor signed them. However, the Court also is persuaded that Debtor did not realize the property was listed as security and that she did not intend to give ' the property as security. Most likely the 1.5 acres was added to the security agreement as a result of the Bank's long relationship with Debtor rather than any express discussion between the Bank and Debtor. This inaccuracy is the result of a misunderstanding rather than bad faith or intentional deception.

**Debt to mother.** The Bank has pointed to Debtor's failure to list the debt to her mother as indicative of bad faith. However, the debt has no relevance to the issue of good faith. It is not a legally binding debt, so Debtor had no obligation to list it. Therefore, its omission does not add to the indicia of lack of good faith.

**Purchase of home.** The Bank contends that the gift of $5,000 from Debtor's sister

was to Debtor-not her husband-and was used to purchase Debtor's current residence for the benefit of both Debtor and her husband. The Bank complains that Debtor failed to list this gift in the schedules and that the use of this gift to assist in the purchase of the home should have given Debtor an ownership interest in the home for the benefit of creditors. The Bank argues that creation of ownership solely in the husband shortly before filing bankruptcy was an effort by Debtor to place this property out of reach of creditors in her bankruptcy case.

The Bank's contentions on these points are without merit. If this had been a joint case, in which the husband had sought relief from this Court to make it possible to purchase the new home shortly before bankruptcy, the Bank's arguments might be significant. It appears, instead, that the husband's finances are secure and that he will not need significant assistance from Debtor to make the monthly payments on this mortgage. Furthermore, the mortgage of about $1,100 per month does not seem excessive to the financial circumstances of these spouses. It often happens that debtors file Chapter 13 cases to make it possible to retain a residence. The acquisition of a home shortly before filing the bankruptcy is a circumstance worthy of careful examination but not one that necessarily points to any misconduct or bad faith on the part of Debtor.

**Lack of advantage.** The errors and omissions complained about by the Bank would have gained Debtor no more advantage than if they had never been discovered. The equity in the mother's house owned by Debtor and not listed in the schedules would have been easily included with an amendment and might possibly be established as worthless to the estate based on the equitable claims of the mother to ownership of the property.

■ Upon being confronted with that proposition, the Bank's counsel could not offer any argument to show how Debtor might have obtained some advantage from these omissions and inaccuracies. While this fact is not conclusive, it is another mitigating element toward the conclusion that Debtor's intentions in filing this case did not include deceiving any of the creditors, including the Bank.

**Conclusion.** This is a case dominated by family issues. The reference to "family issues" does not excuse errors and omissions, but it does explain the ambiguity of circumstances when relations between trusted family members are not clearly defined or documented. The alleged debt from the mother is one such matter, as is the gift from the sister and Debtor's one-half interest in the home believed by Debtor to be owned by her mother. Because of this fact, coupled with the lack of any genuine advantage or incentive to Debtor, it does not appear to the Court that Debtor has abused the provisions, purpose or spirit of Chapter 13. Therefore, the Court is not inclined to dismiss this case or deny confirmation for lack of good faith. For that reason, the Bank's objection will be overruled.

An Order in accordance with this Opinion will be entered on this date.