**In re John Henry Clay SMITH, Debtor(s).**

**Bankruptcy No. 88–02156.**

United States Bankruptcy Court, N.D. Florida, Panama City Division.

March 27, 1989.

Douglas J. Sale, Panama City, Fla., for McElreath.

Jerry W. Gerde, Panama City, Fla., for debtor.

Charles Wynn, Marianna, Fla., Trustee.

## MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on March 16, 1989, on confirmation of the debtor's amended Chapter 13 plan and on the Motion to Dismiss filed by creditor, Pamela K. McElreath. Confirmation of the plan was objected to by both the Chapter 13 trustee and by Miss McElreath. For the

reasons set forth herein, confirmation of the plan will be denied and this case will be dismissed.

The debtor, John Henry Clay Smith, Jr., filed this Chapter 13 petition on August 15, 1988. His initial Chapter 13 plan was filed on September 8, 1988, and provided for payments to the trustee in the amount of $187.67 per month of which, after a deduction of the trustee's ten (10%) percent fee, $168.90 would be distributed to unsecured creditors. The Chapter 13 statement filed by the debtor reflected approximately $85,-000.00 in unsecured claims. However, of this $85,000.00, approximately $12,000.00 appeared to be loans against the cash surrender value of life insurance policies, and $17,000.00 is to Pamela McElreath, the ex-wife of the debtor. The proposed payments in the original plan would provide a dividend to unsecured creditors of approximately eight (8%) percent. It has been clear from the outset that this Chapter 13 case is primarily an extension into this Court of a bitterly fought dissolution of marriage proceeding between the debtor and Miss McElreath, which proceeding terminated with the entry of a final judgment of dissolution on May 13, 1988. In that final judgment, the state court made a finding that the husband (John Henry Clay Smith, Jr.) lacked credibility and that he had appropriated to his own use and benefit jewelry belonging to his wife (Pamela McElreath) with a value of $34,000.00. Based on that finding, the court awarded Pamela McElreath lump sum alimony in the amount of $17,000.00, and provided that the award would be secured by a lien on the husband's interest in the marital home. The court also awarded her the husband's one-half interest in four (4) townhomes owned jointly by the parties and directed that he convey those properties to her on or before June 1, 1988. This conveyance was never made, and when, after this Chapter 13 case was filed, Mrs. McElreath's attorney attempted in the state court to compel Mr. Smith to convey the properties, a motion was filed in this Court seeking to have both Mrs. McElreath and her attorney held in contempt for violation of the automatic stay. Additionally,

the debtor has filed an adversary proceeding seeking to avoid the lien imposed on the marital home pursuant to the Final Judgment of Dissolution and seeking to have the $17,000.00 award of lump sum alimony determined to be a general unsecured claim in the nature of a dischargeable property settlement. No other creditors have appeared in this case or taken part in any of the proceedings other than to file proofs of claim.

Following objections to the original plan filed by the debtor, the debtor filed an amended plan on February 22, 1989, which provided payments in the amount of $332.70 per month to the trustee for distribution to unsecured creditors. The plan further provided for payments outside of the plan of $322.20 to Citicorp as payments on the debtor's 1986 Jeep Cherokee. The objections of the trustee and Miss McElreath both allege that the plan does not represent the best efforts of the debtor, and Miss McElreath's objection includes a claim that the plan has been filed in bad faith.

The budget submitted by the debtor in support of his plan reflects average net monthly income of approximately $2,845.00 with expenses in the amount of $2,512.57. The debtor is currently a single man with no dependents and no support obligations. Included in his monthly expenses are $106.00 in life insurance premiums, $39.00 for cable television, $22.25 for monthly pest control service, $85.00 for laundry and dry cleaning, $800.00 a month rent, and $200.00 per month in attorney's fees. The evidence at the hearing established that upon confirmation of the plan, the debtor intends to abandon his current homestead on which he cannot afford to make approximately $1,100.00 per month mortgage payments and move into a deluxe two bedroom townhome at Gulf Highlands Beach Resort where he is employed as a property manager and a real estate salesman. The debtor is currently and has for the past two years been living with his girlfriend who is gainfully employed but is contributing nothing to payment of rent, utilities or other household expenses other than groceries. The

debtor testified that he needed to live in the $800.00 per month deluxe two bedroom townhome instead of an available $550.00 per month two bedroom townhome because he and his girlfriend needed the space in the larger home. At the conclusion of the hearing, the debtor proposed that he begin collecting $150.00 per month contribution from his girlfriend for her share of expenses with such sum to be applied to the plan. In view of the fact that the debtor feels he needs to spend an additional $250.00 per month on a deluxe townhome so he can live with her, this sum is completely unacceptable in terms of salvaging this Chapter 13 case.

Evidence presented at the hearing further revealed that this debtor has, on at least one occasion, during the pendency of this case, been less than candid in his dealings with the Court and creditors. In his Chapter 13 statement, the debtor indicated that his household goods had a value of $3,000.00. In testimony at hearing, he revised that figure downwards to $1,000.00. However, in July of 1987, he submitted a financial affidavit in connection with his dissolution of marriage proceedings in which he listed his household furnishings with a value of $20,000.00. At hearing, he testified that he had sold several large items of furniture at a garage sale he held sometime in April of 1988, although he admitted that during a Rule 2004 examination taken by Mrs. McElreath's attorney, he claimed that he still had those items which he now states were sold. At hearing, he claimed that he lied during the earlier examination, however, Mrs. McElreath testified that in December of 1988, she saw some of the same items of furniture in the house that the debtor now claims he sold in April of 1988.

The 11th Circuit Court of Appeals has set forth a number of factors that must be considered by a bankruptcy court in making a determination of a debtor's good faith in connection with a Chapter 13 plan. In *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983), the 11th Circuit stated that a bankruptcy court must consider but not be limited to the following factors:

(1) The amount of the debtor's income from all sources;

(2) The living expenses of the debtor and his dependents;

(3) The amount of attorney's fees;

(4) The probable or expected duration of the debtor's Chapter 13 plan;

(5) The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) The debtor's degree of effort;

(7) The debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) Special circumstances such as inordinate medical expense;

(9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) The burden which the plan's administration would place on the trustee;

702 F.2d at 888. Additional factors which the 11th Circuit found to be applicable as noted by the 8th Circuit Court are the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7 and the accuracy of plan's statement of debts and expenses and whether any inaccuracies are an attempt to mislead the Court. *In re Estus*, 695 F.2d 311 (8th Cir.1982).

In the instant case, a number of the factors identified by the 11th Circuit strongly point to this plan not having been filed in good faith. While the debtor is earning in excess of $2,800.00 per month, he also has at least some ability to benefit from the income of his live-in girlfriend for whom he is providing housing at no expense whatsoever. If instead of merely cohabitating, the debtor were married, then his spouse's income would be properly considered in determining his net available income for payment under the plan. *In re Kern* 40 B.R. 26 (Bankr.S.D.N.Y.1984). Moreover, the debtor seeks to continue to live a lavish lifestyle which includes spending between $85.00 and $125.00 per month on laundry, living in a deluxe townhome

with cable t.v. and monthly pest control services, and paying over $100.00 a month in life insurance premiums, which insurance appears to be wholly unnecessary since this debtor has no dependents in need of the protection of insurance on his life. The debtor's budget further includes payments of a total of $6,000.00 in attorney's fees at the rate of $200.00 per month for thirty (30) months under the plan. These attorney's fees include $3,000.00 for the prosecution of an appeal in the state courts from the Final Judgment of Dissolution, and $3,000.00 for representation in these bankruptcy proceedings. As previously set forth herein, we find that the debtor's primary motivation in seeking relief under Chapter 13 is not a sincere desire to pay creditors, but a desire to avoid the affects of the state court judgment dissolving his marriage. The debtor's degree of effort in this plan leaves much to be desired in that, as previously stated, he intends to preserve his lavish lifestyle, continue to support his girlfriend, while at the same time making no provision for potential future increases of earnings to be submitted to the plan or providing for increased payments following completion of payments to his attorneys. Only after questioning by the Court at hearing with respect to the duration of his automobile payments, did the debtor acknowledge that the automobile will be paid off in June of 1990, and he offered to submit the $322.00 which he had been paying on the automobile to the trustee. The debtor's own testimony indicated that he feels that there is a likelihood that his earnings will go up in the future with a continued development at the resort where he is employed. However, these potential increases in earnings were not provided for in the plan and once again it was only upon questioning by the Court that the debtor indicated a willingness to increase plan payments in the event his income increases. The debtor in this case does not enjoy any special circumstances such as inordinate medical expenses, and his debts were the result of primarily of his lifestyle and "living beyond his means". This is the first time that this debtor has sought relief under the Bankruptcy Code, and the plan's

administration would not place a significant burden on the trustee. The circumstances regarding the creation of his obligation to Mrs. McElreath were set forth in the state court final judgment of dissolution as previously noted. Finally, the debtor has been less than candid with his creditors and with the Court with respect to his assets, and under all the circumstances we find that he has attempted to mislead the Court.

We recognize that if all of the concessions made by the debtor at hearing in terms of submitting additional funds to the trustee were in fact followed through with, this Chapter 13 plan could return a fairly substantial dividend to the unsecured creditors. However, given this debtor's history prior to and during this case, we have little faith that he would in fact comply with those offers. It is clear that this case was filed solely as an extension of the state court proceedings in an effort to defeat the claims of the debtor's ex-wife as established in the state court. Even though the proposed dividends under the plan are not insignificant, a weighing of the factors as set forth in *Kitchens, supra,* make it clear that this plan was not filed in good faith and confirmation shall be denied and the case dismissed. A separate order will be entered in accordance herewith.

DONE AND ORDERED.