**In re Daniel L. WILSON.**

No. 93–00342.

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

May 11, 1994.

Lisa Cohen, Gainesville, FL, for Ellen Wilson.

J. Michael Davis, Gainesville, FL, for debtor.

Leigh Hart, Tallahassee, FL, Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CAUSE was heard on the confirmation of the Debtor's proposed Chapter 13 plan. Ellen J. Wilson, the Debtor's former wife and a creditor in the case, objects to confirmation of the Debtor's plan on the basis that the plan was not proposed in good faith as required under 11 U.S.C. § 1325(a)(3). After review of the relevant pleadings and file documents, and consideration of the testimony of witnesses, exhibits and argument of counsel, the Court enters the following Findings of Fact and Conclusions of Law.

The parties to this cause were married in 1967, and, by a final judgment entered by the Alachua County Circuit Court, were divorced on March 31, 1992. The final judgment incorporated a separation agreement negotiated by the parties without advice of counsel which divided the assets of the parties at the time of the divorce. The separation agreement includes a provision which states that the balance of a Bellsouth "management savings plan" in excess of $16,000 was the sole property of Ellen Wilson. The total amount in the Bellsouth savings plan was $69,172.01, thus $53,172.01 was the property of Ellen Wilson.

Subsequent to the divorce, the Debtor withdrew the funds from the Bellsouth account, and, after depositing $16,000 into a personal checking account, deposited the balance of approximately $53,000 into an Individual Retirement Account without informing his ex-wife. The Debtor withdrew these monies from the IRA account to fund personal living and business expenses between July 1992 and June 1993. On several occasions the Debtor sent his ex-wife checks representing partial payments on this obligation, however each of these checks were rejected and returned to the Debtor. The Debtor's ex-wife filed a multi-count complaint based on conversion, breach of contract, and civil theft in state court in June 1993. Progress in the state court action proved to be slow, in part, due to the Debtor's failure to cooperate in discovery. On October 18, 1993, the state court entered an order compelling the Debtor to respond to the discovery requests, and following his continued failure to produce discovery as ordered, the state court set a November 19, 1993 hearing date on a contempt motion for failure to comply with the discovery order. The Debtor filed a petition seeking relief under Chapter 13 minutes before he was to appear before the state court on the contempt motion.

The Debtor's schedules indicate total debts of $74,246.43 are owed to nine creditors. The Debtor scheduled the obligation to his

ex-wife as a disputed, non-priority unsecured claim in the amount of $53,172.01, or more than 70% of his total debts as of the date of the petition. With the exception of the obligation to his former wife, the Debtor was relatively current with all other creditors at the time of his petition. The schedules reflect total assets of $4,010.00, although this total fails to include the value of a 1988 Toyota Cressida of $5,500.00. If this figure were included, the Debtor's total assets would amount to $9,510.00. The Debtor also claims as exempt assets with an aggregate value of $2,850.00. In addition, the Debtor filed schedules summarizing his current income and expenses (Schedules I and J) which reflect monthly net disposable income of $345.00. At the insistence of the trustee, the Debtor subsequently filed amended income and expense schedules which reflect his income and expenses together with those of his new wife. The amended income and expense schedules indicate that the new wife has gross monthly income of $2,162.33 with an additional $520.00 in alimony and child support. After substantial deductions for savings plans and the wife's installment debt, the Debtor indicates a monthly net disposable income of $197.17, however, the plan still proposes to pay $345.00 per month for 36 months.

■ Ellen Wilson objects to confirmation of the plan on the basis that the plan was not proposed in good faith. More specifically, she argues that the Debtor's sole motivation for filing a Chapter 13 petition was to obtain a discharge of the Debtor's obligation to her, which she asserts would be non-dischargeable under Chapter 7. The Debtor argues for confirmation of the plan by asserting that he has made his best efforts in dedicating his net disposable income to the payment of his debts, and that Chapter 13 offers the only avenue to afford him relief from his present financial condition. Chapter 13 was intended to enable an individual with regular income to develop and perform under a plan for the repayment of his debts over an extended term under court supervision and protection. *In re Jernigan,* 130 B.R. 879, 892 (Bankr.D.Okl.1991). The advantage to a debtor to file a Chapter 13 case rather than one under Chapter 7 is that the debtor retains his property while making regular payments to his creditors, and upon successful completion of the plan, obtains a broader discharge. These differences between Chapter 7 and Chapter 13 were intended to encourage debtors to repay their debts, not avoid them through discharge. *Id.* Moreover we note that discharge is reserved only for the "honest, but unfortunate" debtor. *In re St. Laurent,* 991 F.2d 672, 680 (11th Cir.1993).

■ A Chapter 13 plan is to be confirmed if the six requirements of 11 U.S.C. § 1325(a) have been satisfied. In this case only the third requirement of good faith in the proposing of the plan is in question. The Eleventh Circuit has adopted a "totality of the circumstance" approach in determining whether a Chapter 13 plan has been proposed in good faith. *In re Kitchens,* 702 F.2d 885, 888 (11th Cir.1983). Factors properly considered in making this determination include:

1) The amount of the debtor's income from all sources;

2) The living expenses of the debtor and his dependents;

3) The amount of attorney fees;

4) The probable or expected duration of the debtor's Chapter 13 plan;

5) The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6) The debtor's degree of effort;

7) The debtor's ability to earn and the likelihood of fluctuations in his earnings;

8) Special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought bankruptcy relief;

10) The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

11) The burden which the plan's administration would place on the trustee.

*Id.* at 888–89; *In re Smith,* 98 B.R. 44, 46 (Bankr.N.D.Fla.1989). This list is not ex-

haustive; other factors may also be considered including whether the debtor is seeking the discharge through Chapter 13 of a debt not dischargeable under Chapter 7, the accuracy of the debtor's statement of debts and expenses, and whether any inaccuracies are intended to mislead the court. *Smith*, 98 B.R. at 46.

In this case, the Court finds that the totality of the facts and circumstances evidence a lack of good faith in the Debtor's proposed plan, and therefore, confirmation of the plan will be denied. The Debtor left his employment with Bellsouth and converted that portion of management savings account funds in which his ex-wife was granted a property interest upon their divorce to establish a new business venture, but makes no promise to increase the plan payments from future earnings arising due to improved operation of that business. The Debtor used the management savings account knowing that his wife had an interest in the monies without her knowledge or consent. Only after having exhausted all of the monies in which she had an interest did the Debtor make any attempt to negotiate a settlement or other accommodation with Ellen Wilson. When these negotiation attempts failed and his ex-wife pursued her remedies in state court, the Debtor failed to fully cooperate in discovery intended to ascertain where the money had gone. Facing the prospect that he would be held in contempt for the failure to comply with discovery requests, the Debtor sought bankruptcy protection.

At the confirmation hearing on his plan, the Debtor exhibited a lack of candor in his responses by initially denying knowledge of the existence of the state court lawsuit and his failure to fully comply with discovery until opposing counsel demonstrated otherwise. The Debtor listed the obligation to his ex-wife as disputed when there is in fact no dispute that she was entitled to the balance of the Bellsouth management savings account. He additionally failed to amend his Schedules I and J to reflect his income and expenses together with his new wife as requested by the trustee until the day of the confirmation hearing. The amended schedules indicate that the Debtor will continue to pay his new wife's debts and support her savings program to the detriment of his creditors. The Debtor proposed a plan with a term of only 36 months and which will provide a minimal distribution to non-priority unsecured creditors. Only when it appeared to the Debtor and his counsel that the plan was not likely to be confirmed did the Debtor offer to extend the plan beyond the minimum required under the Code.

When viewing these circumstances in total, the Court concludes that the plan was not proposed in a sincere effort to repay debts over a reasonable period of time, but rather, was proposed as a vehicle to evade the burden of paying his wife the full amount to which she is entitled. See, *In re Smith*, 98 B.R. 44, 47 (Bankr.N.D.Fla.1989). At no time during the proceedings has the Debtor ever denied converting his former wife's funds to his own use nor has he offered any legal justification or defense. His only explanation was that he needed the money and that he had already given her seventy-five percent of that to which she was entitled under the agreement. The Debtor's claim that Chapter 13 offers the only relief from his current financial condition is unavailing. Having converted over $50,000 of his former wife's money, he is not deserving of relief from the condition he created for himself. This is not the "honest, but unfortunate" debtor for whom the bankruptcy laws were designed to provide relief. The proposed plan is an abuse of the provisions, purpose and spirit of Chapter 13. See, *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir.1986), and confirmation will be denied.

A separate order will be entered in accordance herewith.