**In re Janet PRESLEY, Debtor.**

**Bankruptcy No. 95–00306.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

July 23, 1996.

Karen K. Specie, Gainesville, FL, for City of Gainesville.

Sharon Sperling, Gainesville, FL, for Debtor.

Leigh Hart, Trustee, Tallahassee, FL.

## MEMORANDUM OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CAUSE came on for hearing on confirmation of the debtor's second amended chapter 13 plan. The chapter 13 trustee and the City of Gainesville, a judgment creditor, object to confirmation of the plan on the grounds that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3), and the plan does not satisfy the disposable income test of 11 U.S.C. § 1325(b)(1)(B). For the reasons set forth herein, the objections to confirmation are overruled and the debtor's second amended plan is confirmed.

### Findings of Fact

Janet Presley ("Debtor") was a police officer employed by the City of Gainesville ("City") for twenty years. In 1992, a flare-up of a recurrent back injury caused Debtor to be restricted to light duty work at the police department front desk. Debtor was not allowed to work overtime due to her injury. In January 1993, Debtor filed suit against City in Alachua County Court under the Americans with Disabilities Act, seeking to recover $3,000.00 for lost wages she would have earned had she been allowed to work overtime. City removed the case to federal district court. After a three-day trial, in June 1994, the court granted City's motion for directed verdict. In July 1994, the court entered a directed verdict in favor of City and awarded costs and attorney fees, the amount to be determined at a later hearing. In January 1995, a judgment awarding fees in the amount of $48,162.50 was entered. On advice of counsel, Debtor appealed both the directed verdict and the award of costs and fees. Based on her attorney's analysis of existing Eleventh Circuit case law, Debtor believed her maximum liability for City's attorney fees would be approximately $9,000.00. In March 1996, the Eleventh Circuit affirmed the district court's directed verdict and award of fees and costs, and awarded appellate attorney fees and double costs.

In October 1993, Debtor received approximately $37,000.00 from the settlement of a personal injury lawsuit ("the 1993 Settlement"). Debtor used a portion of the settlement funds to pay off a mortgage on property she purchased several years earlier and as a down payment for the construction of a house on that property. Construction began shortly thereafter.

Veronica McQueen and her husband, Debtor's sister and brother-in-law respectively, loaned approximately $50,000 to Debtor over a period of years to assist Debtor with living expenses following a divorce. In 1990, Debtor and the McQueens agreed that Debtor would purchase land in Marion County for the McQueens as partial payback of these loans. Debtor purchased the property for $20,000.00 and made improvements to the property over the next several years. In

February 1994, Debtor transferred a half-interest in the property to Veronica McQueen. Debtor did not transfer the entire interest in the property because Veronica McQueen wanted Debtor to retain an interest for survivorship purposes. In May 1995, Debtor, at Veronica McQueen's request, deeded her remaining one-half interest in the Marion County property to her sister. According to Debtor, Veronica McQueen has agreed to deed the Marion County property back to Debtor so that it can be sold and the proceeds used to fund Debtor's plan. In February 1994, Debtor paid Veronica McQueen $10,000.00 of the 1993 Settlement proceeds as further payback of the loans.

In May 1995, Debtor received a settlement from a personal injury suit ("the 1995 Settlement") in the approximate amount of $45,000.00. Debtor used these settlement proceeds to make numerous improvements to her homestead property, pay attorney fees, satisfy two unsecured loans to credit unions, pay off a loan made years earlier by a friend of the family, make a down payment on a John Deere riding lawn mower, and pay medical and living expenses.

At some point prior to filing her petition, Debtor obtained a judgment against Angus Grover ("the Grover judgment") in the amount of $130,000.00. Debtor views the Grover judgment as a valueless asset because Angus Grover has filed his own chapter 7 case, and as a result, Debtor did not dedicate the judgment to making payments under earlier versions of her reorganization plan. In response to City's and the trustee's objections to the omission, Debtor has dedicated any recovery on the judgment to making payments under her second amended plan.

On October 13, 1995, City recorded its judgment against Debtor in an effort to commence collecting on its debt. Later that day, Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code [1] out of fear that City would garnish her wages.

### Conclusions of Law

Debtor bears the burden of proving that her proposed second amended plan satisfies the requirements for confirmation. City and the trustee raise two objections to the plan. They claim that: (1) Debtor's plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3), and (2) Debtor has not dedicated all of her disposable income to making payments under the plan, as required by 11 U.S.C. § 1325(b). Any other objections not discussed herein are wholly unsupported by the evidence and are hereby denied.

### *Bad Faith*

▮ A chapter 13 plan must satisfy the good faith requirement of § 1325(a)(3) if it is to be confirmed. The Eleventh Circuit has set forth the following nonexclusive list of factors that courts should use when determining whether a plan has been proposed in good faith:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and her dependents;

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; and

(11) the burden which the plan's administration would place on the trustee.

*In re Kitchens*, 702 F.2d 885, 888 (11th Cir. 1983).

---

1. 11 U.S.C. §§ 101 et seq. (1995).

This Court has held that other factors may be considered including the type of debt to be discharged and whether such debt would be nondischargeable in chapter 7, the accuracy of the debtor's statements of debts and expenses, and whether any inaccuracies are intended to mislead the court. *In re Wilson*, 168 B.R. 260, 263 (Bankr.N.D.Fla. 1994). No one factor is of paramount importance. Rather, it is the totality of the circumstances which controls the good faith determination. If a court finds that there "has been an abuse of the provisions, purpose or spirit of the chapter in the proposal," then the court cannot find that the plan has been proposed in good faith. *In re Kitchens*, 702 F.2d at 888.

Applying the above factors to this case, the Court finds that Debtor has proposed her plan in good faith. Debtor has a moderate income which is not easily manipulated and is likely to remain stable for the duration of the plan. Debtor did not devote the Grover judgment to making payments under earlier plans. She testified that the judgment was not included because she considered it a valueless asset, as Mr. Grover has filed his own Chapter 7 petition. The Court finds this omission, which has been remedied by including the Grover judgment in the second amended plan, to be inadvertent and not indicative of a lack of good faith.

Debtor's living expenses are reasonable and necessary for her support, and are not indicative of a luxurious lifestyle.[2] Debtor's attorney fees, in the amount of $1,700, do not appear to be excessive given the amount of litigation conducted in this case. City and the trustee argue that Debtor is seeking to discharge a debt under chapter 13 that would be nondischargeable under chapter 7. However, neither City nor the trustee has cited, and the Court was unable to locate, a single case in which the court held that an award of attorney fees and court costs is nondischargeable under chapter 7.

Debtor proposes a 36-month plan which commits all of her disposable income. Generally, good faith does not require a debtor to propose a plan of longer duration. *In re Humphrey*, 165 B.R. 508, 511 (Bankr. M.D.Fla.1994). However, some courts have held that a debtor's failure to propose a plan for a period of longer than three years is an indication of a lack of good faith where the debtor is seeking to discharge an otherwise nondischargeable debt, which was incurred due to tortious or malevolent conduct of the debtor. *See, e.g., In re Wilson*, 168 B.R. at 263 (debtor sought discharge of claim for conversion of his former wife's money). In this case, Debtor's filing a complaint in Alachua County Court is neither tortious nor malevolent. Debtor, on advice of counsel, sought to recover minimal damages in a court equipped to deal with small cases at minimal costs to the litigants. City chose to move the litigation to federal court in which it was awarded fees sixteen times the amount originally sought by Debtor. Later, Debtor appealed the district court's award of attorney fees and costs, on the advice of counsel and existing case law. The fact that the district court and the Eleventh Circuit Court of Appeals found Debtor's filings to be frivolous does not lead to the conclusion that Debtor's conduct was tortious or malevolent.

The second amended plan's statements of debts and expenses are accurate and were not filed in an attempt to mislead the Court. Debtor does not enjoy any special circumstances, such as inordinate medical expenses. This is the first time Debtor has sought relief under the Bankruptcy Code, and the plan's administration would not place an undue burden on the trustee.

The *Kitchens* factors which are the main thrust of City's and the trustee's objections are Debtor's motivations in filing for bankruptcy, and her degree of effort and sincerity in dealings with her creditors. City and the trustee argue that Debtor's primary motivation in filing bankruptcy is to discharge the debt of City, and that Debtor has engaged in a course of conduct, pre-petition and post-petition, which evidences a lack of good faith. Debtor acknowledged that she filed bankruptcy because she feared that City was

---

**2.** A more detailed discussion of Debtor's expenses is included under the *Disposable Income* sub-heading, *infra*.

about to garnish her wages, and as a result, she would not be able to keep current on her mortgage and other payments. Further, City is not the only unsecured creditor in this case. City's claim amounts to less than one-half of the total unsecured claims. Thus, while the City action to collect its judgment may have precipitated the filing, I do not find that Debtor filed this case solely to prevent City from recovering on its judgment.

For purposes of determining good faith, the relevant conduct to be considered must be that which occurred after the entry of the judgment setting forth the amount of attorney fees and costs in January 1995. Prior to this date, Debtor had no apparent reason to avoid payment of City's debt and she certainly did not anticipate how large it would be. After the entry of judgment in City's favor, but before filing for bankruptcy, Debtor transferred her remaining one-half interest in the Marion County to Veronica McQueen in May 1995. Debtor's unrebutted testimony established that she purchased this property as partial payback of a debt owed to Veronica McQueen. Thus, the transfer of the Marion County property to her sister within five months of filing for bankruptcy may be preferential, but should not be considered as fraudulent. Veronica McQueen has agreed to deed the property back to Debtor and Debtor has included proceeds from the future sale of said property in her second amended plan. Debtor received the 1995 Settlement in May 1995, and used the proceeds to make improvements to her home, pay off loans to two unsecured creditors, and pay attorney fees, among other things. At that time, Debtor was current on her bills, City had not recorded or attempted to execute on its judgement, Debtor had appealed the judgment, and, based on consultations with her attorney, Debtor expected City's judgment to be either overturned or reduced to a maximum of $9,000.00. Under these circumstances, Debtor's conduct does not evidence a lack of good faith.

City cites several cases to support its argument that Debtor's plan should not be confirmed because the underlying debt arose out of Debtor's wrongful conduct. *E.g., In re Norwood,* 178 B.R. 683 (Bankr.E.D.Pa.1995)

(denying confirmation where debtor raped an inmate and debtor's plan provided no payment to the inmate creditor); *Noreen v. Slattengren,* 974 F.2d 75 (8th Cir.1992) (denying confirmation where debtor had been convicted of child abuse and debtor's plan provided minimal payment to the victim on her judgment); *In re Norman,* 162 B.R. 581 (Bankr. M.D.Fla.1993) (denying confirmation where debtor manipulated the Bankruptcy Code to "to escape full liability for unpaid taxes by seeking refuge in the super-discharge provision of chapter 13"). In these cases, confirmation was denied because the underlying debts arose from criminal, fraudulent or malevolent conduct. Debtor's conduct in seeking to recover minimal damages in a county court does not rise to that level. When Debtor filed her suit against City, she grabbed a tiger by the tail and the tiger turned around and bit her. However, the fact that Debtor's suit against City may have been ill-advised does not necessitate a finding that her plan was proposed in bad faith.

After considering the totality of the circumstances, I conclude that Debtor has proposed her plan in good faith. Accordingly, City's and the trustee's objections to confirmation, on grounds that the plan has not been proposed in good faith, are overruled.

### Disposable Income

■ A court may not confirm a chapter 13 plan over the objection of the trustee or an unsecured creditor unless:

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1). In this case, Debtor's second amended plan does not pay unsecured creditors in full, and thus, the plan must meet the disposable income test of § 1325(b)(1)(B). The Bankruptcy Code defines disposable income as "income which is received by the debtor and which is not reasonably necessary to be expended for the

maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2). The Eleventh Circuit has not established a bright line test for determining what expenses are "reasonably necessary" in the context of a chapter 13 plan. Thus, courts must determine whether a debtor's listed monthly expenditures, individually and as a whole, are reasonably necessary for the maintenance or support of that debtor. *In re Jones,* 55 B.R. 462 (Bankr.D.Minn.1985), *contra, In re Humphrey,* 165 B.R. 508 (Bankr.M.D.Fla.1994) (adopting minority position of analyzing propriety of expenditures within the confines of the good faith standard of § 1325(a)(3)). This determination must be made on a case-by-case basis. *In re Gillead,* 171 B.R. 886 (Bankr.E.D.Cal.1994).

Debtor's schedules list monthly income of $3,223.60 and monthly expenses of $2,839.01. Debtor testified that her expenses increased slightly to $2,855.42 per month as a result of increased homeowner's insurance premiums. Debtor has $368.18 in monthly disposable income and a proposed monthly plan payment of $385.00. City objected generally under § 1325(b)(1)(B), and claimed that Debtor has not dedicated all of her disposable income to making payments under the plan. The Chapter 13 trustee objected to the following monthly expenses:

| | |
|---|---|
| $1,267.00 | Mortgage Payment |
| $ 400.00 | Food |
| $ 124.60 | Lawn Mower |
| $ 51.13 | Disability Insurance |
| $ 18.72 | Term Life Insurance |

Courts have consistently held that expenses are not reasonably necessary for the maintenance of the debtor, and denied confirmation of a plan, where the expenses are for luxury goods and services, investments, investment property, or where the expenses are clearly excessive. *E.g., In Re Hedges,* 68 B.R. 18 (Bankr.E.D.Va.1986) (finding that a boat used for recreation is a luxury item and not reasonably necessary); *In re Fountain,* 142 B.R. 135 (Bankr.E.D.Va.1992) (holding that monthly payments to debtor's pension fund are not necessary for maintenance or support); *In re Cardillo,* 170 B.R. 490 (Bankr.D.N.H.1994) (finding mortgage payments on an investment condominium not reasonably necessary).

None of the expenses objected to by the trustee fits into one of the above categories. Debtor's monthly housing payment is for a mortgage, which includes insurance and taxes, on Debtor's exempt property. Other courts have found higher mortgage payments to be reasonable and necessary for the maintenance of a debtor. *E.g., In re Gillead,* 171 B.R. at 892 (finding a $1,733 mortgage payment was reasonable and necessary). Debtor's monthly food expenses are reasonable given that her job requires her to eat two or three meals per day outside of her home. The John Deere riding lawn mower is a reasonably necessary expense because Debtor's home is situated on five acres of land. Debtor testified that she once had a lawn service which cost $125 each time the lawn was mowed. She also testified that less expensive mowers had proven completely inadequate for the task of cutting five acres of thick grass. Further, the disability insurance is reasonably necessary in light of Debtor's past medical problems, specifically the recurrent back injury which has caused her to miss work or be restricted to light duty. Finally, term life insurance is not an investment asset.

The expenses objected to by the trustee are reasonably necessary for the maintenance or support of the Debtor. The Court has also examined Debtor's expenses which were not objected to, and is satisfied that these expenses are reasonably necessary. Further, under Debtor's second amended plan, Debtor will make some payments directly to creditors. The claims of two of these creditors will be paid in full prior to the completion of the plan. Debtor's second amended plan provides that payments to the trustee will increase by the amount of these former payments. Finally, Debtor's plan provides that income realized from the sale of the Marion County property and the Grover judgment will be used to fund the plan. Thus, having examined Debtor's schedules, relevant testimony, and second amended plan of reorganization, I conclude that Debtor has devoted all of her disposable income to her plan. Accordingly, City's and the trustee's objections to confirmation on the grounds

that Debtor's second amended plan violates the disposable income test are overruled.

### Conclusion

Debtor has complied with the "good faith" and "disposable income" requirements of § 1325. City's and the trustee's objections to confirmation are overruled and Debtor's second amended plan is confirmed. The trustee is directed to submit an appropriate order.